IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM SULLIVAN, #157 996 | * | |
| Plaintiff, | * | |
| v. | * | 2:05-CV-1033-MEF |
| | | (WO) |
| SIDNEY WILLIAMS, *et al.*, | * | |
| Defendants. | * | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

_____Plaintiff, William Sullivan ["Sullivan"], an inmate currently confined at the Elmore

Correctional Facility in Elmore, Alabama, filed the instant action under 42 U.S.C. § 1983

on October 23, 2005.[1] In this complaint Sullivan names as defendants Robert Longshore,

a member of the Alabama Board of Pardons and Paroles, Sidney Williams, a former member

of the Alabama Board of Pardons and Paroles, and Carolyn Minter, secretary for the Alabama

Board of Pardons and Paroles.[2] Sullivan complains of actions related to the denial of his

---

[1]Although the present complaint was stamped "filed" in this court on October 28, 2005, it was signed by Sullivan on October 23, 2005. A *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Sullivan] signed it . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing, the court construes October 23, 2005 as the date of filing.

[2]Sullivan also named Nancy McCreary as a defendant to the complaint. Service was never effected on this individual and, therefore, the court finds that she is due to be dismissed as a party. (*See Doc. Nos. 21,*

request for parole which occurred on November 10, 2003.  He seeks declaratory and injunctive relief and damages for the alleged violations of his constitutional rights.

Pursuant to the orders of this court, Defendants filed a special report, supplemental special report, and supporting evidentiary material addressing Sullivan's claims for relief. (*Doc. Nos. 18, 28, 40, 63*.) The court then informed Sullivan that Defendants' special report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the court explained to Sullivan the proper manner in which to respond to a motion for summary judgment. Sullivan filed responses to the special report filed by Defendants. (*Doc. Nos. 69. 83*.) This case is now pending on Defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Sullivan's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

In order to survive the properly supported motions for summary judgment submitted by Defendants, Sullivan is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

---

26.) *See also* Rule 4(m), *Federal Rules of Civil Procedure*; *Schnabel v. Wells,* 922 F.2d 726, 728 (11th Cir.1991) (interpreting the 120-day period as it appeared in Rule 4(j), *Federal Rules of Civil Procedure*, the predecessor to Rule 4(m), *Federal Rules of Civil Procedure*); *In re Cooper,* 971 F.2d 640, 641 (11th Cir.1992) (absent a showing of good cause, a district court has no discretion to salvage an action in the event of a violation of Rule 4(m)).

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Sullivan has failed to establish that there is a genuine issue as to a material fact in order to preclude summary judgment.

## II. DISCUSSION

Sullivan is serving a term of life imprisonment imposed on him in April 1990 as a result of his conviction for murder. The Alabama Board of Pardons and Paroles ["the Board"] most recently considered Sullivan for parole on October 27, 2003. Following a short continuation of the Board's consideration of Sullivan's parole request, the Board denied

Sullivan parole on November 10, 2003. The Board set off Sullivan's next parole consideration date for five years.

In this action, Sullivan presents the following issues for review:

1. Defendants violated the *Ex Post Facto* Clause of the Constitution and the Constitution of the State of Alabama by setting off Sullivan's next parole hearing for five years rather than three years which was the maximum set off time in effect at the time of his conviction;

2. Ala. Code § 15-22-33(b) violates the Separation of Powers Clause and violates Sullivan's rights to due process and equal protection by making parole files privileged and thereby disallowing any judicial oversight or review of the contents therein;

3. At Sullivan's October 2003 parole hearing the victim's parents violated Sullivan's right to a fair and impartial hearing by presenting false testimony to the Board which influenced its decision to deny him parole;

4. Defendants exceeded the scope of and/or failed to follow their own regulations when they denied Sullivan parole in 2003;

5. Sullivan's right to due process was violated during his October 2003 parole hearing by the presence of false information in his parole file;

6. Defendants violated Sullivan's due process and equal protection rights at his October 2003 parole hearing by failing to adhere to the six requirements mandated for quasi-judicial proceedings.

4

## A. *Res Judicata and Collateral Estoppel*

Defendants maintain that Sullivan has already unsuccessfully litigated the issues he presents in the following complaint. On November 4, 2004 Sullivan filed a petition for writ of certiorari in the Circuit Court for Montgomery County, Alabama, raising four of the same claims and issues as he presents in the instant action. During the pendency of the present complaint, Defendants assert that the state court ruled in favor of the Board on "the very issues being litigated in this Court." (*Doc. No. 63.*)

Claim preclusion, or res judicata, bars a subsequent claim when a final judgment has been entered on the merits of the same cause of action in a prior lawsuit between the parties. *Taylor v. Sturgell*, ___ U.S. ___, 2008 WL 2368748 *9 (June 12, 2008). Therefore, "a party who has had one fair and full opportunity to prove a claim and has failed in that effort should not be permitted to go to trial on the merits of that claim a second time." *Blonder-Tongue Labs. Inc., v. University of Illinois Foundation*, 402 U.S. 313, 324-35 (1971) (quoting *Bruszewski v. United States*, 181 F.2d 419 (1950)).

Two causes of action are the same for claim preclusion purposes when the following four elements are satisfied: (1) there is a prior judgment on the merits in the first action, (2) the prior decision is rendered by a court of competent jurisdiction, (3) there is substantial identity of the parties to both actions or those in privity with them, and (4) the same causes are presented in both cases. *Hart v. Yamaha-Parts Distributor, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986); *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala.1998).

A review of the instant complaint reflects that out of the six claims Sullivan presents in the instant action, four of those claims are identical to the four claims he presented in his state court petition for writ of certiorari. Res judicata is not applicable, however, because Defendants have failed to establish identity of the parties which is an essential element of res judicata. *See Hart*, 787 F.2d at 1470. According to the evidentiary material before the court, Sullivan sued the "Alabama Board of Pardons and Paroles, *et al*.," in his state court petition. (*See Doc. No. 63, Exh. A*.) The defendants remaining in the instant lawsuit are Sidney Williams, Bobby Longshore, and Carolyn Minter. Although Defendants argue that they are in privity with the party who litigated the former action, the court notes that there is a lack of clarity regarding the capacity in which the parties were sued. Sullivan specifically states in the instant case that he sues the named defendants in their official and individual capacities but his state court action is silent in this regard. This is an important consideration as neither identity nor privity exists when a party is sued in his official capacity and then sued later in his individual capacity. *See Andrews v. Daws*, 201 F.3d 521, 526 (4th Cir. 2000) ("a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."). In light of this uncertainty, the court finds that claim preclusion does not apply to this action.

Issue preclusion, or collateral estoppel, is an affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if that action differs significantly from the first one. *Taylor*, 2008 WL 2368748 *9. "Collateral estoppel,

unlike res judicata, is not limited to parties and their privies." *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986); *Unimex, Inc. v. United States Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1061 n. 3 (5th Cir. 1979) (*per curiam*) (noting that suit against an official sued in his official capacity will not operate as collateral estoppel in a subsequent suit against the official sued in his personal capacity). Thus, issue preclusion is applicable when (1) an issue in a prior action was identical to the issue being litigated in the present action; (2) the issue was actually litigated in the prior action; (3) resolution of the issue was a critical and necessary part of the prior judgment; and (4) the party(s) involved in the prior action had a full and fair opportunity to litigate the issue in the earlier action. *Id.* Issue preclusion "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 329 (1979) (citation omitted). Accordingly, collateral estoppel is not precluded here based on a possibility that the named defendants were sued in different capacities in the two suits.

With regard to the first element of issue preclusion, the court finds that the first four issues presented in this lawsuit are identical to the four claims presented in Sullivan's state petition for writ of certiorari. Thus, the first element of issue preclusion is satisfied. The court also finds that the second and third requirements of issue preclusion have been met as the four issues at stake were litigated in the prior lawsuit and the state court's determination of the issues in the prior litigation was a critical and necessary party of the judgment in the previous action. (*See Doc. No. 63, Exh. A.*)

7

Fully litigated in Sullivan's state court petition for writ of certiorari were the issues of whether: 1) the Board violated the *Ex Post Facto* Clause of the Constitution and the Constitution of the State of Alabama by setting off Sullivan's next parole hearing for five years rather than three years which was the maximum set off time in effect at the time of his conviction, 2) Ala. Code § 15-22-33(b) violates the Separation of Powers Clause and violates Sullivan's rights to due process and equal protection by making parole files privileged and thereby disallowing any judicial oversight or review of the contents therein, 3) at Sullivan's October 2003 parole hearing the victim's parents violated his right to a fair and impartial hearing by giving false testimony before the Board, and 4) the Board exceeded the scope of and/or failed to follow its own regulations when it denied Sullivan parole in 2003. The state court concluded that none of the claims presented by Sullivan in his petition for writ of certiorari were meritorious and that no other issue raised in the petition warranted the court's exercise of equitable jurisdiction to review the Board's actions in a certiorari petition. (*Doc. No. 63 at Exh. A-4.*) The state court's determination of these issues was a critical and necessary part of the court's judgment. (*Id.*)

The court understands Sullivan to argue that the state court judgment had no preclusive effect because certiorari petitions are confined to questions of law, they do not provide for a trial by jury, and they do not provide for declaratory, injunctive or monetary relief. Sullivan further contends that the state court only addressed three of his issues, that it erroneously addressed one of these issues by mistakenly finding that he had a second public

parole hearing, that he was denied a full and fair opportunity to litigate his issues before the

state court because he was never allowed discovery, and that the state court chose not to

analyze the evidence before it. (*Doc. No. 83*.)  Sullivan's disagreement with the state court's

determination, however, does not state a legal basis for defeating the application of issue

preclusion.

The last requirement of issue preclusion is that the party against whom the earlier

decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier

proceeding. With regard to this element, Sullivan must be "permitted to demonstrate, if he

can, that he did not have a fair opportunity procedurally, substantively, and evidentially to

pursue his claim the first time." *Blonder-Tongue Labs. Inc.*, 402 U.S. at 333 (quoting *Eisel

v. Columbia Packing Co.*, 181 F. Supp. 298, 301 (D.C. Mass. 1960)).

Sullivan was able to fully litigate his claims in his certiorari petition.  Also, he had

at least as great an incentive to litigate fully in the state court as he does here and has not

identified any procedural irregularities in the state court petition which would render

preclusion unfair. Accordingly, the court concludes that all the elements of issue preclusion

have been met and Sullivan's challenges to the application of collateral estoppel are without

merit. Sullivan is, therefore, precluded from rearguing the four claims set forth.

Notwithstanding this determination, the court notes that prior to the rendering of the state

court's decision on Sullivan's petition for writ of certiorari, Defendants argued that they were

entitled to summary judgment on the merits of Sullivan's claims because he failed to

9

demonstrate a violation of any constitutional right to which he is entitled. (*See Doc. No. 18.*)

This argument by Defendants would likewise warrant dismissal of Sullivan's claims.[3]

## B. The Ex Post Facto Claim

Sullivan maintains that Defendants violated the *Ex Post Facto* Clause of the Constitution when they retroactively applied relevant administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his most recent parole consideration date. The *Ex Post Facto* Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Id.* at 255. Decisions with respect to whether a parole regulation violates the *Ex Post Facto* Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "created a significant risk of increasing his punishment." *Id.* at 1350.

---

[3]As noted, Defendant Minter is the secretary for the Board. In her capacity as secretary for the Board, Ms. Minter keeps the Board's minutes and enters the actions taken by the Board on the "parole docket sheet during open public meetings. She has no decision-making authority in deciding which prisoners are granted or denied parole nor any duty or responsibility to set inmates for further parole consideration. (*See Doc. No. 18, Exh. B.*) Despite Ms. Minter's apparent lack of decision-making authority with regard to parole determinations, for ease of reference, the court collectively refers to "the Defendants" in addressing Sullivan's claims.

In *Garner, supra*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years for Georgia prisoners violated the *Ex Post Facto* Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstance or the discovery of new, relevant information. *Garner,* 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of *ex post facto* legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Garner*, 529 U.S. at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. *Id.* at 253.

Alabama law gives the Board broad discretion in determining whether an inmate should be granted parole, *see* Ala. Code§ 15-22-26, and when parole will be granted, *see* Ala. Code§ 15-22-24(a). This discretion does not displace the protections of the *Ex Post Facto Clause. Garner,* 529 U.S. at 253. Applicable state law also requires that the Board consider

11

the public interest in every case. Ala. Code § 15-22-26.

The law changing the frequency of parole consideration dates is found in two regulations. Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles (2003)*, vests the Board with discretion to determine how often to set an inmate's date for reconsideration, with five years being the maximum. Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial or revocation, the Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole." The opportunity for an expedited parole review is likewise available to qualified inmates. Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the prison rules." Thus, the Board's rule changes are designed for the better exercise of its discretion. *(See Doc. No. 18, Exh. A)*; *see Garner*, 529 U.S. at 254-55.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Sullivan. Specifically, "[a]t the time he committed his crimes, Alabama law presumed he would serve his entire life term in prison." *(Doc. No. 18 at 8)*. Additionally, if subsequent consideration is scheduled three years or more after denial of parole, an inmate's case may be reviewed within eighteen months after denial. *(Id., Exh. A at pg. 7 - Article 2 § 7, Rules, Regulations and Procedures of the Board of Pardons and Paroles (2003).)* Eighteen months after a

denial of parole Sullivan has the opportunity under the current regulation to "initiate contact with designated officers in the Board's Central Office, who may review the prisoner's progress to determine whether it may be appropriate to schedule earlier parole consideration." (*Id. at Exh A. pg. 6 - Article 2, § 1, Rules, Regulations and Procedures of the Board of Pardons and Paroles (2003)*). Thus, even if risk of an increased term of incarceration develops in Sullivan's case, he may, upon a showing of "circumstances bearing on his ability to succeed on parole," seek an earlier review before the 5-year interval expires. (*Id.*)

Here, Sullivan presents no evidence, nor is the court aware of any such evidence, which demonstrates that the regulation at issue creates a significant risk of increased punishment for him. Moreover, Sullivan possesses the ability to petition for an earlier parole consideration date. Based on the foregoing, the court concludes that the change in Alabama law did not lengthen Sullivan's actual term of imprisonment. Thus, Sullivan's *ex post facto* claim does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. Defendants are, therefore, entitled to summary judgment on this claim.

## C. Privileged Nature of Parole Board Files Claim

Sullivan complains that Ala. Code § 15-22-36(b) as applied to him is unconstitutional because it violates the separation of powers doctrine and denies him due process and equal protection. Specifically, Sullivan alleges that because any person can place information in

an inmate parole file and because there is no judicial review of the file because Board members are the only ones who may review the contents of said file, there is no method by which an inmate may contest possibly false information which may be contained in his parole file. (*Doc. No. 2.*)

Sullivan's parole files are privileged under state law. *See* Ala. Code § 15-22-36(b). The privileged nature of state parole files does not violate the separation of powers doctrine. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 218-19 (1995). Further, while Sullivan argues that the Board may not use the statute to conceal false information in a parole file, the law is clear that the Board may not rely on information they *know* to be false to deny an inmate parole. *see Jones v. Ray,* 279 F.3d 944 (11th Cir. 2001). Thus, it is possible that in certain limited circumstances, which are not found here, the Board might not necessarily be able to use the statute to require the court's blind acceptance to its declaration of privilege. It is likewise true, however, that discovery rules, *see Federal Rules of Civil Procedure*, do not permit Sullivan to go on a fishing expedition. *See Porter v. Ray,* 461 F.3d 1315, 1324 (11th Cir.), *cert. denied*, ___ U.S. ___, 127 S.Ct. 516 (2006).

Notwithstanding a declination to accept an all-encompassing prohibition with regard to the Board's confidentiality policy, Sullivan's challenge to the confidential nature afforded state parole files, standing alone, is insufficient. It is undisputed that Defendants "vehemently deny relying on or using false information when deciding whether or not to grant or deny parole in relation to" Sullivan during his 2003 parole proceedings. (*Doc. No.*

*28, Exh. A, Doc. No. 40, Williams Affidavit.*) Sullivan offers no facts in support of the instant

claim suggesting that he has been injured and/or prejudiced by allegedly incorrect

information contained in his parole file or that there is erroneous information in his parole

file which Defendants relied on to deny him parole which would support a determination that

he may be able to have his parole file, or portions thereof, reviewed by this court. Defendants

are, therefore, due to be granted summary judgment on this claim.

### D.  The False Information Claims

Sullivan presents two false information claims. With regard to the first claim, Sullivan

alleges that the parents of the  victim of his crime gave perjured testimony under oath at his

October 27, 2003 parole hearing which influenced Defendants' decision to deny him parole.

According to Sullivan, the victim's father, William Smith, incorrectly stated that his son was

stabbed 17 times by Sullivan and falsely stated that Sullivan had vowed to kill his ex-wife

upon his release from prison.  Sullivan also asserts that the victim's mother, Karen Sullivan,

insinuated to the Board that Sullivan had a complete disregard for the law when she stated

"he never abided by the law."  Sullivan contends that the false statements made by the

victim's parents were done for no other purpose than to inflame the passion of the Board and

misdirect them. (*Doc. No. 2.*)

Attached to Sullivan's brief in support of his complaint is an incomplete copy of the

coroner's report describing the victim's injuries, a letter dated July 30, 2004 from Sullivan's

ex-wife stating that she does not fear him, and a newspaper article indicating, among other

things, that a deputy district attorney who helped prosecute Sullivan's murder case indicated

that the victim had seven stab wounds and a total of 17 wounds, including cuts and other

abrasions.[4]  (*Doc. No. 2, Exhs. B, C, D.*)

Based on the evidence submitted in support of his complaint, Sullivan argues that he

has proven that the testimony provided by the victim's parents was false. He, therefore,

maintains that "the [B]oard[, in] relying on the false information given by the Smiths" caused

it to exceed its authority under Ala. Code § 15-22-26 which in turn caused Defendants to

treat Sullivan in an arbitrary and capricious fashion. (*Doc. No. 2 at 12-14.*)

Sullivan's second false information claim concerns the existence of allegedly

erroneous information contained in a pre-sentence investigation report portions of which he

claims were placed in a "Social Service Action" form prepared by the Alabama Department

of Corrections and subsequently passed along to the Board pursuant to Ala. Code § 15-22-

25. (*See Doc. No. 2, Exh. K.*) Sullivan submits five pages of his criminal trial transcript

which he contends  supports his contention that the criminal history information contained

within the Department of Corrections' Social Services Action form is erroneous.[5]  (*See Id.*

---

[4]With regard to the exhibits offered by Sullivan in support of his claim of false testimony, the court notes that the coroner's report  reflects that the victim suffered multiple stab wounds which caused his death, the letter from Sullivan's ex-wife was written more than nine months after his October 2003 parole hearing, and the newspaper article reiterates that the victim suffered multiple stab wounds. (*Doc. No. 2 at Exhs. B, C, D.*)

[5]According to the documents submitted by Sullivan in support of his false information claim, the information he argues is erroneous has to do with the validity of his criminal history, and specifically, a reference to two  misdemeanor convictions which, during Sullivan's criminal sentencing proceedings, his trial counsel maintained were invalid. (*See Doc. No. 2 at Exh. L.*) During what appears to be a prison classification and/or custody review, this allegedly erroneous criminal history information (which Sullivan

16

*at Exh. L.*)

The Board is tasked with weighing all the evidence contained in a parole file and presented at the open public meeting. The Board, in its discretion, weighs the credibility of the evidence before it. In this case, Defendants do not admit that the information utilized in the decision-making process with respect to Sullivan's 2003 parole proceedings is false and deny any knowing reliance on false information to deny him parole. (*Doc. No. 28, Longshore Affidavit, Doc. No. 40, Williams Affidavit.*)

The Eleventh Circuit in *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991*)*, recognized an exception to the general rule that there is no liberty interest in parole or a due process interest in parole procedures unless the state creates the expectancy of parole or limits official discretion to deny parole. In *Monroe,* the court held that the state parole board acted "arbitrarily and capriciously" in violation of due process when it knowingly relied on false information in the prisoner's file. *Id.* at 1442. The court distinguished the facts of *Monroe* from the facts of an earlier case which held that "prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration." *See id.; cf. Slocum v. Georgia State Bd. of Pardons and Paroles,* 678 F.2d 940, 942 (11th Cir. 1982). *Monroe,* therefore, established an exception for parole determinations which were knowingly made on false information contained in the prisoner's

---

alleges was obtained from the same pre-sentence investigation report utilized at Sullivan's criminal trial), was placed in Sullivan's prison file which he contends was subsequently forwarded to the Board. (*Id. at Exh. K.*) The pre-sentence investigation report from which Sullivan contends the erroneous information was derived is not included among his evidentiary material.

file. *See Id.* at 1442. The court emphasized, however, that "federal courts should not interfere with the discretionary decisions of [a state parole] [b]oard 'absent flagrant or unauthorized action' by the [b]oard." *Id.* at 1441 (quoting *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir. 1982)).

As set forth above, Sullivan argues that false testimony was presented to the Board during his most recent parole hearing which overstates the number of times he actually stabbed his victim, brands him as a career non-law abiding citizen, and misstates how his ex-wife perceives him, and that there is a document in his parole file which contains false information regarding his criminal history. Sullivan argues that the testimony and document in question affected the parole decision made at his most recent parole hearing. Nonetheless, Defendants deny relying on or using false information when deciding whether or not to grant Sullivan parole.

As noted, *Monroe* limits the exception that recognizes a due process interest in the parole process to those parole decisions made *knowingly* on false information. *See Monroe,* 932 F.2d at 1442. In *Monroe,* the court found that such action violated the prisoner's right to due process. *Id.* The court cautioned, however, that a petitioner's claims that false information may have been used in the parole decision are insufficient to trigger review by the district court. *See id.* Accordingly, in the instant case, Sullivan must show not only the existence of false information at the relevant time but also that the Board relied on that information in making a parole decision while knowing the information to be false. Sullivan

18

has not met this burden.

Even assuming Sullivan could show that erroneous testimony was presented to Defendants or that there was false information in his parole file at the time of his 2003 parole hearing, he has presented no evidence that Defendants knowingly relied on any false information when making the parole decision in his case. Not only does the Board have a duty to consider in good faith all relevant information in an inmate's parole file, including evidence and testimony presented during parole consideration hearings, when making parole decisions, but also a duty of personally studying an inmate to determine their fitness for parole. (*See Doc. No. 28, Longshore Affidavit, Doc. No. 40, Williams Affidavit.*) Absent a demonstration that Defendants engaged in any flagrant unauthorized action  such as knowingly relying on false information to deny Sullivan parole, he has not shown  a due process violation.   Defendants are, therefore, due to be granted summary judgment on Sullivan's false information claims.

### E.  The Parole Consideration Process Claims

Sullivan makes two claims concerning matters associated with the parole consideration process he underwent in  2003.  First, Sullivan  maintains that Defendants failed to act in accordance with their own rules  and regulations applicable to the parole consideration process  when they concluded his parole hearing by indicating that they were waiting on an additional document and upon receipt of said information, they would render their decision. Sullivan maintains that the Board's rules and regulations require parole board

19

members to either proceed to a decision following a parole hearing, or if a member is not ready to take action, said member must state whether additional information is needed, and if so, state what that information is. If the information cannot be obtained during the meeting, Sullivan contends that agency rules require the Board to decide whether to proceed to a decision without the additional information or to schedule another parole hearing after the additional information is reviewed. Sullivan requests that his October 27, 2003 parole hearing be declared null and void as a result of Defendants' illegal action in failing to schedule another parole hearing after failing to reach a decision that day and deciding instead to wait on "a document not in the file to help [them] see what's going on a little better." (*Doc. No. 2, Exh. A at 32.*) Sullivan further requests that Defendants be required to divulge the contents of the document "which they waited for illegally." (*Doc. No. 2 at 14-15.*)

Secondly, Sullivan asserts that his October 2003 parole hearing constituted a quasi-judicial meeting. As such, Sullivan argues that Defendants were required to follow six requirements mandated by state law for such proceedings.[6] According to Sullivan,

---

[6]Sullivan cites to *Webster v. Byrd*, 494 So.2d 34 (Ala. 1986), which he contends mandates adherence to six elements required for quasi-judicial proceedings under state law. *Webster* was a defamation action brought by a teacher against the president of a community college. The Alabama Supreme Court held that a letter of termination was a communication made in the course of a quasi-judicial tenure proceeding and was, therefore, absolutely privileged. Contrary to Sullivan's assertion that the *Webster* decision established six mandatory requirements for quasi-judicial state proceedings, the court simply referenced examples of due process safeguards normally applicable to such proceedings and found that statements made during the course of such proceedings should be absolutely privileged. Specifically, the court determined:

> Where an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, *e.g.*, notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's

Defendants only complied with two of the six requirements thereby violating his due process rights. (*Doc. No. 2 at 18-19.*)

### 1. The Request for Monetary Damages

Sullivan seeks monetary damages from Defendants with respect to their conduct and/or actions undertaken during the parole consideration process. This Circuit has long recognized that parole board members are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole. *Fuller v. Georgia State Board of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101-02 (5th Cir. 1974). The actions about which Sullivan complains concern proceedings related to his consideration for release on parole. Under these circumstances, the actions of the defendant parole board members are inextricably intertwined with their decision-making authority, and they are, therefore, absolutely immune from damages. Thus, Sullivan's claim for monetary damages against Defendants is subject to dismissal. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### 2. The Requests for Declaratory and Injunctive Relief

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action

---

> behalf, the right to be heard in person, and the presence of an objective decision-maker, see *Board of Education of Choctaw County v. Kennedy, supra,* that proceeding is quasi-judicial in nature and statements made in the course of the proceeding should be absolutely privileged.

*Id*. at 34.

21

on the part of the board. The law directs the board to consider a number of factors in making

their determination, which is a subjective rather than objective determination. It does not

contain any language that mandates parole . . . When the statute is framed in discretionary

terms there is not a liberty interest created." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir.

1982). This court's review of the history of the Alabama parole statute likewise establishes

that from its inception the statute has been framed in discretionary terms. The law is well

settled that "[t]he mere possibility of parole provides simply 'a hope that is not protected by

due process . . .'  *Greenholtz,* 442 U.S. at 11, 12, 96 S.Ct. at 2105, 2106 (1979). . . .

[Moreover], the Alabama parole statute frames the Parole Board's authority in discretionary

terms, and thus does not create for Alabama prisoners a protected liberty interest in the

expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v.*

*Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

> Unless there is a liberty interest in parole, the procedures followed in making
> the parole determination are not required to comport with standards of
> fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert.
> denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). In *Staton v.
> Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the
> court concluded that no liberty interest in parole was created by the Florida
> statutes. The court, therefore, rejected appellant's claim that his due process
> rights were violated when he did not receive an initial parole interview within
> the time required under the parole laws. The analysis in *Staton* was adopted
> by the Eleventh Circuit in *Hunter v. Florida Parole and Probation
> Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due
> process violation could be shown through an allegation that the Florida Parole
> and Probation Commission improperly calculated a prisoner's "presumptive
> parole release date."

*Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir. 1982).

Sullivan does not possess a liberty interest in being granted parole that is protected by

the Due Process Clause. *Monroe*, 932 F.2d at 1441; *Ellard*, 824 F.2d at 941-942; *Thomas*,

691 F.2d at 488-489. Thus, the procedural due process protections of the Fourteenth

Amendment do not apply to either the parole decision-making process, *Thomas*, 691 F.2d

at 488-89, to the determination of parole consideration dates, or to the calculation of a

presumptive date for release on parole. *Slocum*, 678 F.2d at 942    Similarly, a delay in

making the decision to grant or deny parole following a scheduled parole hearing and/or a

failure to hold a follow-up parole hearing in violation of the governing administrative

regulations likewise does not run afoul of the Constitution.

Here, Sullivan asserts that Defendants acted outside the scope of the rules and

regulations governing parole hearings and violated state law during the proceedings related

to their decision to deny him parole in 2003. Federal courts, however, no longer ascertain

whether a state created a constitutionally protected liberty interest by parsing language of

statutes, rules, and regulations to determine if the language was "of an unmistakably

mandatory character" placing "substantive limitations on official discretion" but must instead

look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin*

*v. Conner*, 515 U.S. 472, 483-484 (1995). As previously noted, an Alabama inmate has no

liberty interest in parole protected by the Due Process Clause. Although "States may under

certain circumstances create liberty interests which are protected by the Due Process

Clause[,]... these interests will be generally limited to freedom from restraint which, while

23

not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. "Since an inmate is normally incarcerated in prison, [Sullivan's remaining in prison following a denial of parole] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. Defendants maintain that they denied Sullivan parole because they were  not persuaded that he presented an acceptable risk for release on parole.  Defendant's decision demonstrates reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Sullivan has, therefore, failed to present any evidence indicating arbitrary or capricious action on the part of Defendants with regard to their conduction and/or actions during his 2003 parole proceedings.  Consequently, the motion for summary judgment with respect to Sullivan's due process claims is due to granted in favor Defendants.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's complaint against Defendant McCreary be DISMISSED without prejudice and Defendant McCreary be DISMISSED as a party to the complaint in accordance with the provisions of Rule 4(m), *Federal Rules of Civil Procedure;*

2. Defendants' motion for summary judgment (*Doc. Nos. 18, 63*) be GRANTED;

3. Judgment be ENTERED in favor of Defendants;

4. The costs of this proceeding be TAXED against Plaintiff for which execution may issue;

5. This case be DISMISSED with prejudice.

It is further

ORDERED that on or before June 30, 2008 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 17th day of June 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

26